

## Office of the Attorney General
### State of Texas

DAN MORALES
ATTORNEY GENERAL

February 6, 1992

Honorable Richard Barajas
District Attorney
83rd Judicial District of Texas
P. O. Box 639
Fort Stockton, Texas 79735

Opinion No. DM-86

Re: Responsibility of a sheriff with regard to a private detention facility operated under contract with a county (RQ-70)

Dear Mr. Barajas:

You ask about the statutory and constitutional responsibility of a county sheriff in regard to the operation of a detention center. You state that Pecos County has contracted with a private company to operate a detention facility.

Your first two questions focus on language in the contract between the county and the private vendor providing that the private vendor is an independent contractor and, subject to the terms of the contract, that the private vendor shall have "the sole right to supervise, manage, operate, control, and direct the performance of the details incident to its duties" under the contract. Operation & Management Servs. Agreement art. VI, § 6.1, at 12 (1989). Essentially, you ask whether that language is inconsistent with the sheriff's constitutional and statutory responsibilities.

Subchapter F of chapter 351 of the Local Government Code governs county contracts with private entities for jail facilities. Section 351.102 of the Local Government Code authorizes a county to contract with a private vendor for the "financing, design, construction, leasing, operation, purchase, maintenance, or management" of a jail facility. The sheriff must approve such a contract, but the sheriff may not unreasonably withhold approval. A contract made under section 351.102 must:

> (1) require the private vendor to operate the facility in compliance with minimum standards adopted by the Commission on Jail Standards and receive and retain a certification of compliance from the commission;

> (2) provide for regular, on-site monitoring by the sheriff;
>
> . . . .
>
> (10) contain comprehensive standards for conditions of confinement.

Local Gov't Code § 351.103.

A county sheriff has no constitutional authority or responsibility in regard to the housing of county inmates. *See* Tex. Const. art. V, § 23; *id.* art. XI, § 2; 35 D. BROOKS, COUNTY & SPECIAL DISTRICT LAW § 20.48 (Texas Practice 1989). In regard to statutory duties, the specific provisions of subchapter F of chapter 351 of the Local Government Code would prevail over any general provisions setting out the duties of the county sheriff in regard to the housing of county inmates. Thus, the contract provision giving the private vendor "the sole right to supervise, manage, operate, control, and direct the performance of the details incident to its duties" under the contract would be inconsistent with the sheriff's statutory responsibilities only if it were inconsistent with the statutorily required contract provision for regular, on-site monitoring by the sheriff. We do not find the provisions to be facially inconsistent.

Section 351.102 allows the county to contract for "operation" and "management" of a detention facility, and section 351.103 requires that the contract provide for "regular, on-site monitoring by the sheriff." In that context, we think it is clear that "monitoring" means that the sheriff has authority to evaluate the vendor's performance of the contract. We do not believe it means that the sheriff has authority to make or overrule decisions about the details of day-to-day operation. The contract at issue here reflects that interpretation of the term "monitoring" by providing the sheriff shall provide his own check lists for monitoring the quality of the operator's performance of the contract. Operation & Management Servs. Agreement art. XII, § 12.6, at 24 (1989). Thus, the contractual provision that the private vendor shall have "the sole right to supervise, manage, operate, control, and

direct the performance of the details incident to its duties"[1] under the contract is not on its face inconsistent with the sheriff's authority to monitor operation of the facility. The resolution of a specific conflict between the sheriff and the private vendor that arose in the actual execution of the contract would be a matter, in the first instance, for the parties to the contract.

Your last question is whether the sheriff or the Texas Commission on Jail Standards (hereinafter the "commission") may withhold certification of a private prison facility, or whether the commission may de-certify a facility, if 1) it fails to meet the *operational* standards of the commission, or 2) jailers employed in the facility are not certified pursuant to section 415.0541 of the Government Code or by the Texas Commission on Law Enforcement Officer Standards and Education. Thus, the various provisions of the Government Code that apply to the United States Code's certification of a county jail apply to a private prison facility.

A *sheriff* has no responsibility for certification of a jail. Also, section 351.103 of the Local Government Code requires "the private vendor to operate the facility in compliance with minimum standards adopted by the [commission] *and receive and retain a certification of compliance from the commission.*" (Emphasis added.) Furthermore, chapter 511 of the Government Code gives the commission a duty of continuing supervision over the facility.

In addition to its duty to adopt rules establishing various kinds of minimum standards for the operation of a "county jail" pursuant to section 511.009 of the Government Code, the commission also is charged with a duty to act in the event a facility does not comply with such minimum standards:

> If the commission finds that a county jail does not comply with state law or the rules, standards, or procedures of the commission, it shall report the noncompliance to the county commissioners and sheriff of the county responsible for the county jail and shall send a copy of the report to the governor.

---

[1]The contract specifies that the operator is responsible for training employees, staffing the facility, food service, laundry services, transportation, telephones, health services, recreation and exercise, visitation, commissaries, safety, sanitation, libraries, inmate correspondence, religious services, and security. *Id.* art. V.

Gov't Code § 511.011. Presumably, a county which receives such information may then proceed to enforce its contract with the private vendor, since the contract *must* require the private vendor to comply with minimum commission standards. *See* Local Gov't Code § 351.103. But the commission itself may, in the event of noncompliance, also act. Under section 511.012 of the Government Code, the commission is authorized to "prohibit confinement of prisoners in the county jail." In the alternative, the commission may, pursuant to section 511.014 of the Government Code, "bring an action in its own name to enforce or enjoin a violation of Subchapter A, Chapter 351, Local Government Code, or a commission rule, order, or procedure."

Individuals employed as jailers by a private detention facility were the subject of the inquiry in Attorney General Opinion JM-1152 (1990). That opinion concluded that jailers employed by a private vendor are not "county jailers" under the terms of section 85.005 of the Local Government Code. Rather, such contract personnel are included within the ambit of those "other county jail personnel" who are regulated by the provisions of section 415.0541 of the Government Code. That statute declares:

> (a) The commission [on Law Enforcement Officer Standards and Education] shall establish minimum physical, mental, educational, and moral standards for persons employed or used in the operation of a county jail.

> (b) The commission's authority and power applies to all county jail personnel. The commission shall have additional staff to carry out this section.

> (c) Not later than one year after the date that the commission establishes standards for county jail personnel, each county must have all jail personnel certified by the commission.

> (d) A standard requiring a person to have a degree of formal education or the equivalent does not apply to a person who was employed or whose services were used in the operation of a county jail on August 29, 1977.

On the basis of this language, Attorney General Opinion JM-1152 held that "the commission [On Law Enforcement Officer Standards and Education] has authority

to 'establish minimum physical, mental, educational and moral standards' for the certification of a 'contract county jailer.'" Attorney General Opinion JM-1152 at 3. Section 415.0541 gives each county a one-year deadline to comply with the minimum standards established by the Commission on Law Enforcement Officer Standards and Education for other jail personnel, including jailers employed by a private vendor. If the facility fails to comport with the deadline imposed by section 415.0541, the Commission on Jail Standards may reasonably conclude that the facility "does not comply with state law," as required by section 511.009, and proceed accordingly.

## SUMMARY

The only duty of a sheriff with regard to a detention facility operated by a private vendor pursuant to a contract with his county is to exercise "regular, on-site monitoring" of the facility. The Commission on Jail Standards has a continuing duty under chapter 511 of the Government Code to monitor a private detention facility for compliance with its standards. If a facility fails to comply with the one-year deadline for certification of its jailers by the Commission on Law Enforcement Officer Standards and Education, the Commission on Jail Standards may conclude that the facility "does not comply with state law" under chapter 511, and apply certain remedies against the facility.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Rick Gilpin
Assistant Attorney General